Welch, J.
INTRODUCTION
In her complaint, plaintiff Linn Haddad (“Haddad”) alleges she was wrongfully terminated from her position as Chief Assessor for the City of Beverly in retaliation for her refusal to undervalue a certain property and for disclosing her employer’s alleged attempts to undervalue the property. Haddad claims violations of G.L.c. 149, §185, (Count I), intentional infliction of emotional distress (Count II), defamation (Count III), interference with contractual relations (Count IV),[3] violation of the covenant of good faith and fair dealing (Count V), and violations of G.L.c. 12, §111 (Count VI). Arguing that Haddad, by instituting an action under G.L.c. 149, §185, has waived all other rights and remedies, all defendants now move to dismiss Counts II, IV, V, and VI. For the reasons discussed below, the defendants’ motion will be allowed in part and denied in part.
BACKGROUND
The undisputed facts, or facts taken in favor of plaintiff as non-moving party, are as follows. On April 8, 1996, Haddad was appointed acting chief assessor for the City of Beverly, and on June 6, 1998, she was appointed as chief assessor to complete the remainder of an unexpired term which was set to expire January 1, 1997. Haddad continued to serve in office beyond the expiration of the term.
In the fall of 1996, defendant William Scanlon (“Scanlon”), the mayor of the City of Beverly, ordered Haddad to abate 25% of Herrick House’s 1995 and 1996 taxes and to exempt the property from taxation entirely for 1997 and all subsequent years. Herrick House is an assisted living facility located in Beverly, and according to G.L.c. 19D, §18(c), is required to be assessed at full value. Herrick House had previously filed abatement applications for 1995 and 1996. The abatement applications were denied by the Board of Assessors and appeals were filed with the Appellate Tax Board. Haddad refused to comply with Scanlon’s order to value Herrick House below full value. In November 1996, at a meeting of the Beverly Board of Assessors and the City Solicitors, Scanlon publically berated and verbally abused Haddad for refusing to undervalue Herrick House.
In January 1997, Scanlon refused to officially reappoint Haddad to the Board of Assesors. In May 1997 Haddad notified an official at the Massachusetts Department of Revenue that she had been ordered by Scanlon to assess Herrick House in an unlawful manner. In December 1997, Haddad related the problems she had with Scanlon relative to the Herrick House to the President of the Beverly City Council.
On April 9, 1998, Haddad requested medical leave pursuant to the Family and Medical Leave Act. On June 5, 1998, while on that leave, she was terminated as an employee of the City of Beverly.
*299 DISCUSSION
G.L.c. 149, §185, or the Whistleblower’s Act, prohibits public employers from taking retaliatory action against an employee because the employee discloses an activity, policy, or practice of the employer which the employee reasonably believes is in violation of the law or because the employee objects to or refuses to participate in such activity, policy, or practice. See. G.L.c. 149, §§ 185(b)(1) and (3). Retaliatory action is defined as the “discharge, suspension, or demotion of an employee or other adverse employment action taken against an employee in the terms and conditions of employment." G.L.c. 149, §185(a)(5). The statute provides a private cause of action to any employee aggrieved by a violation of the statute. See G.L.c. 149, § 185(d). In addition to the remedies provided in the statute, which include reinstatement of fringe benefits and seniority rights, three times lost wages and benefits and other remuneration, and attorney’s fees and costs, the statute provides that “[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs.” Id. The statute further provides, however, that “the institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law.” G.L.c. 149, §185(f).
In their motion to dismiss, the defendants argue that, by invoking G.L.c. 149, §185, and pursuant Section (f) of that statute, Haddad has waived all other tort and contract claims that arise out of her allegedly retaliatory termination or other adverse employment action. In response, Haddad argues that because Section (d), which states that all common law remedies are available to plaintiffs, and Section (f), which states that a plaintiff waives all common law rights and remedies, are apparently in conflict, it is unclear which rights are waived and which are preserved. The disagreement between the parties thus focuses on the scope of the waiver provision.[4]
Massachusetts courts have yet to interpret this statute and the scope of its waiver provision. In its interpretation of the statute, this court will, however, be guided by the rules of statutory construction. When construing a statute, “(t]he text [of a statute] must be afforded it plain meaning when it is clear and unambiguous. When ambiguities are present, however, ‘a statute must be interpreted according to the intent of the Legislature.’ ” Singer Friedlander Corp. v. State Lottery Comm., 423 Mass. 562, 564 (1996) (alteration in original; (citations omitted). Accordingly, because the court finds the waiver provision ambiguous, the court will need to determine the intent of the legislature. The intent of the legislature in enacting legislation is to be “ascertained from all the words [of the statute] construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers maybe effectuated.” Id., at 564-65 (citations omitted).
Several other rules of statutory construction also inform the court’s interpretation. First, statutes are to be construed in light of the preexisting common law. See Femllo’s Case, 331 Mass. 635, 637 (1954). Remedial legislation, such as that at issue here, should be construed broadly “so as to accomplish more fully the remedial purpose which prompted its passage.” Boston v. Hospital Transportation Services, Inc., 6 Mass.App.Ct. 198, 201-02 (1978). At the same time, this waiver provision should be narrowly construed. See Kerins v. Lima, 425 Mass. 108, 110 (1997) (statutes in derogation of common law to be construed narrowly); see also Falmouth Ob-Gyn Assoc., Inc. v. Abisla, 417 Mass. 176, 179 (1994) (construction of statute intended to modify common law should advance, not defeat, purpose of legislature). Further, the court should, if possible, construe allegedly conflicting provisions of a statute “in a way that is harmonious and consistent with the legislative design.” Peters v. Michienzi, 385 Mass. 533, 537 (1982); see also Doliner v. Planning Board of Millis, 343 Mass. 1, 5 (1961). And finally, a court should avoid an overly literal reading of the waiver provision “if to do so would be inconsistent with legislative intent.” Town of Oxford v. Oxford Water Co., 391 Mass. 581, 592 (1984).
Clearly, the overriding purpose of the Whistleblower’s Act is to encourage state workers to exercise their rights under the act — namely the right to refuse to participate in and the right to report activities of the employer that the employee reasonably believes violates the law or poses a risk to public health, safety or the environment — and to discourage state employers from violating those rights. Examined against the background of common law rights for wrongful termination, this statute provides broader protections to state workers than the common law did. Compare G.L.c. 149, §(b)(l) (employer prohibited from retaliatory action against employee who discloses or threatens to disclose employer activity which employee reasonably believed posed a risk to public health, safety or environment); with Upton v. JWP Businessland, 425 Mass. 756, 757-58 (1997) (liability may be imposed on employer who terminates at-will employee in violation of clearly established public policy), and cases cited. The statute is, therefore, an expansion of the common law with the result, and inferred intent, that it should now be easier for state employees to sue and recover against employers who take retaliatory action against them.
*300 Given the above discussion, it seems unlikely that the legislature, by including the waiver provision, intended to penalize an aggrieved employee who elects to pursue a cause of action under the Whistleblowers Act by requiring them to waive all other rights and claims that arise out of the employment relationship, whether by contract or law. Such a literal reading of the provision would lead to a result that is contrary to the purpose of the statute as a whole. Rather, a more logical reading of the purpose of waiver provision, and one more consistent with the introductory language of the waiver provision itself, is that the legislature intended to prevent an employee’s duplicative or cumulative recovery based on the retaliatory action. The waiver provision relates specifically to rights and remedies available if the employee is wrongfully discharged, or otherwise penalized in the terms of their employment, as a result of disclosure activities, but it does not mean waiver of all rights and remedies which arise out of the employment relationship. That is, an employee may not simultaneously claim statutory and common law causes of action for the wrongful discharge. An employee may, however, pursue any contractual, common law, or other statutory claim that is sufficiently distinct from the discharge claim. Accordingly, the court holds that a state employee who institutes an action under G.L.c. 149, §185(d), waives all rights and remedies arising out of the retaliatory action, but does not waive claims which are substantially separate from and independent of the cause of action to recover for the retaliatory action.
Application of the above interpretation of the waiver provision to the present case results in dismissal of the plaintiffs claims for interference with contractual relations (Count IV) and for violation of the covenant of good faith and fair dealing (Count V). To prove a claim of unlawful interference with contractual relations, a plaintiff must show that he had a contract with a third party, the defendant, through improper means or motive, knowingly induced the third party to break the contract, and the plaintiff was injured. See Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994). Because it requires proof of improper motive or means, this claim is essentially a common law claim of retaliation, it arises solely out of the termination, and is thus deemed waived. Additionally, plaintiffs violation of good faith and fair dealing claim is essentially a breach of employment contract claim, which claim arises solely out of the termination, and is therefore also deemed waived. Accordingly, Count IV and Count V will be dismissed against all defendants.
Conversely, plaintiffs intentional infliction of emotional distress and her civil rights claims (Counts II and VI) are not deemed waived in the circumstances of this case. The plaintiff has alleged conduct independent of the discharge which could support such claims. However, the burden will be on plaintiff to shownot only that distinct actions, i.e. not just termination, form the basis of her emotional distress and civil rights claims, but to also show distinctdamages.
This holding in is accordance with the New Jersey courts interpretation of an identical waiver provision contained in their own version of a whistleblowers act, known as the Conscientious Employee Protection Act (“CEPA”). See N.J.Stat.Ann. 34:19-1 et seq. CEPA is substantially similar to the Massachusetts act,[5] and is identical in its waiver provision[6] and its “all common law tort remedies available” statement.[7] See N.J. Stat. Ann. §§34:19-5 and 34:19-8 (West 1988 & Supp. 1999). In the leading case interpreting the scope of the waiver provision, the Supreme Court of New Jersey stated that “the [CEPA] waiver provision applies only to those causes of action that require a finding of retaliatory conduct that is actionable under CEPA,” and “does not prevent an employee from proceeding with his or her common-law tort and contract claims that are sufficiently distinct from the CEPA claim.” Young v. Schering Corp, 660 A.2d 1153, 1155, 1160 (N.J. 1995). The court went on to affirm the lower court’s dismissal of plaintiffs common-law claims of interference with business relationships and intentional infliction of emotional distress. The lower court had dismissed those claims on the theory that the plaintiff sought essentially the same relief under those claims as under the CEPA claim and the claims were therefore barred by the waiver provision. Id. at 1156, 1162.[8]
On a final note, the Massachusetts Tort Claims Act exempts public employers from liability for any claim arising out of an intentional tort. See G.L.c.258, §10(c). Consequently, Haddad’s claims against the City of Beverly for intentional infliction of emotional distress, (Count II), defamation (Count III), and violations of G.L.c. 12, §111 (Count VI), will be dismissed.
ORDER
It is hereby ORDERED that defendants’ motion to dismiss is ALLOWED IN PART and DENIED IN PART. As against defendant City of Beverly, Counts II, III, V, and VI are dismissed. As against all other defendants, Counts IV and V. are dismissed.

 Haddad seeks relief against only the individual defendants in this count. All other counts were instituted against all defendants.

 Haddad raises two additional arguments. First, Haddad argues that, even if the court interprets the waiver provision as barring all of Haddad’s other claims against the City of Beverly, nothing in the statute restricts claims against individual defendants who are not employers. However, with the exception of the defamation count, the individuals named in this suit are being sued because of the actions they took in *301 their capacity as city officials and their ability to affect her employment with the City of Beverly. If the Court were to adopt Haddad’s reasoning, plaintiffs could circumvent the waiver provision and the provision would be rendered meaningless. Second, Haddad argues that at trial she might not convince a jury that she was terminated in contravention of the Whistleblowers Act, but could recover under her common law causes of action. While this may be true, it is not a compelling reason for this court to essentially ignore the waiver provision contained in the statute. The statute provides a generous remedy to, along with requiring a waiver by, an employee who wishes to invoke it. Nothing in statute requires an employee to sue under the statute, and the statute is quite clear that it was not intended to be a mandatory or exclusive remedy against an employer. See G.L.c. 149, § 185(f); compare G.L.c. 152, §24.

 The major differences between Massachusetts’ and New Jersey’s whistleblower statutes are: (1) CEPA applies to all employers, not just public employers; compare G.L.c. 145, § 185(a)(2) with N.J. Stat. Ann. §34:19-2(a) (West 1988); (2) Massachusetts protects employees who disclose or thteaten to disclose, or object to or refuse to participate in an activity that the employee reasonably believes poses a risk to the public health safety or environment whereas CEPA protects only those employees who object to or refuse to participate in an activity that is incompatible with a clear mandate of the public policy concerning the public health, safety, welfare or protection of the environment; compare G.L.c. 149, §§(b)(l) and (2) with N.J. Stat. Ann. §34:19-3(c)(3) (West 1988 & Supp. 1999); (3) CEPA has as one year statute of limitations as opposed to the two year limit in Massachusetts; compare G.L.c. 149, § 185(d) with N.J. Stat. Ann. §34:19-5 (West 1988); (4) CEPA explicitly protects health care workers who report or object to improper patient care; see N.J. Stat. Ann. §§34:19-3(a), (b) and (c)(1); and (5) the remedies provided by the statutes are the same except that Massachusetts provides for three times lost wages and benefits, while New Jersey provides for only single lost wages and benefits but allows for punitive damages and civil fines payable to the state. Compare G.L.c. 148, §185(d) with N.J. Stat. Ann. §34:19-5 (West 1988 & Supp. 1999).

 CEPA’s waiver provision provides in part: “the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.” N.J. Stat. Ann. §34:19-8 (West 1988).

 CEPA’s remedies provision provides in part: ”[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs.” N.J. Stat. Ann. §34:19-5 (West 1988 & Supp. 1999).

 New York also has a statute which protects employees from their employers retaliatory actions. See N.Y. Labor Law §740 (McKinney 1988). Although the statute is significantly different from the Massachusetts act, the New York statute does contain the identical waiver provision. See N.Y. Labor Law §740 (7). The sole New York case interpreting the scope of the waiver provision held the waiver barred only “those causes of action relating to retaliatory discharge,” but did not prevent an employee from recovering for causes of actions “which are separate and independent from the cause of action to recover damages for retaliatory discharge." Kraus v. Brandstetter, 586 N.Y.S.2d 269, 270 (1992).